IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | Case No. 1:CR-11-048-01 |
| **v.** | : | |
| **ERIC JAWAIN WATKINS** | : | Judge Sylvia H. Rambo |

## M E M O R A N D U M

Presently before the court is Eric Watkins' motion to vacate, set aside, or correct a sentence pursuant to 28 U.S.C. § 2255. (Doc. 79.) Because Watkins knowingly and voluntarily entered a guilty plea, and because his counsel was not ineffective, the motion will be denied.

## I. Background

On February 16, 2011, a grand jury returned a five-count indictment charging Watkins with bank robbery. (Doc. 1.) On March 1, 2011, the court appointed Federal Public Defender Lori Ulrich, Esquire, as counsel to represent Defendant. (Doc. 16.) On June 6, 2011, a two-count felony information charged Watkins with armed bank robbery. (Doc. 34.) On June 28, 2011, Watkins pled guilty to the information pursuant to a plea agreement, whereby the Government would recommend a three-level reduction for acceptance of responsibility, if warranted, and move for dismissal of the indictment. (Docs. 35 & 45.) Watkins agreed to make full restitution to the numerous banks that he robbed. (Doc. 35, ¶ 16.) Watkins waived his right to appeal any conviction and sentence on any ground set forth in 18 U.S.C. § 3742. (*See id.* at ¶ 30.)

At the plea hearing held on June 28, 2011, Watkins testified under oath to the following: (1) he was satisfied with the representation received from counsel (Doc. 88, Tr. Change of Plea Proceeding, p. 3); (2) he understood he was entitled to enter a not guilty plea and go to trial (*Id.* at p. 5); (3) he was advised of his potential sentence (*Id.* at p. 6); and (4) that there were no threats for him to enter into the plea agreement, no other promises other than the plea agreement were made to him, and no promise of a sentence was made (*Id.* at p. 7). The Government set forth the following facts that it would have presented in support of the charges if Watkins was to go to trial:

> [O]n September 17th of 2010 in Parkton, Maryland, within Baltimore County in the District of Maryland, that Mr. Watkins did enter the M&T Bank on Mount Carmel Road in Parkton, Maryland, *display a firearm*, and, in fact, take by threat and fear . . . $4550.00. An individual matching his description was captured on the video surveillance as well as one of the tattoos that he has was visible in the video. That bank was also insured by the Federal Deposit Insurance Corporation as was the Sovereign Bank on South Queen Street in York, which Mr. Watkins robbed on January 5th of 2011 in the City of York; again, *displayed a firearm* and took $10,050.00 in United States currency belonging to the custody and control of the Sovereign Bank.
>
> When Mr. Watkins fled from that robbery on January 5th of 2011, he was apprehended. The firearm was recovered as well as some of the cash taken from that bank.

(*Id.* at p. 11 (emphasis supplied).) Watkins admitted to the facts, including his use of a firearm during the commission of the robbery, as set forth by the Government:

> By the Court: Mr. Watkins, did you on January 5, 2011, rob the Sovereign Bank on South Queen Street in York, Pennsylvania, and retrieve approximately $10,050.00, *and you did so by displaying a firearm*?

| [Watkins]: | Yes, ma'am. |
| --- | --- |
| Court: | And did you on September 7, 2010, in Maryland, rob the M&T Bank at Parkton, Maryland, and take away $4550.00, *and did so with a dangerous weapon*? |
| [Watkins]: | Yes, ma'am. |

(*Id.* at p. 11-12 (emphasis supplied).) The court accepted Watkins' guilty plea. (Doc. 48.)

    A sentencing hearing was held on December 14, 2011. The guideline range for the charges to which Watkins pled was 78 to 97 months.[1] Before proceeding to sentencing, the court advised the parties that it was considering an upward departure from the guideline range, and indicated its willingness to postpone sentencing to give the parties an opportunity to prepare for this possibility. Following a brief adjournment, the court proceeded with sentencing. (Doc. 89, Tr. of Sentencing Proceeding, pp. 2-3.) At the sentencing hearing, both Watkins' counsel and Government counsel requested the court impose a 78-month term of imprisonment. (*Id*. at pp. 3, 9, & 12.) Watkins' mother testified on Watkins' behalf in support of the imposition of a sentence at the low-end of the range. (*See generally id.* at pp. 4-7.) Relevant to the instant challenges to his sentence, Watkins' mother testified that "[her son] has been well and is getting the treatment that he's needed for his depression and also for his thyroid disease and addictions that he has." (*Id*. at p. 5.) Defense counsel cited similar traits in support of her argument for a sentence imposed at the low end of the guideline range: "Clearly, [Watkins] was crying out because he was suffering from a lot of problems, *mental health*, drug addiction, some physical problems." (*Id.* at p. 8

---

[1] The guideline range for all of the robberies would have been 108-135 months.

(emphasis supplied).) In addition, Defendant himself indicated he suffered from such problems, but stated that he was benefitting from treatment while incarcerated. Specifically Defendant testified that "since I've been incarcerated, I've been treating all my problems that I suffer from, which includes *my mental illness*, my substance abuse, and my gambling addictions." (*Id*. at p. 10.) The court did not depart upward from the guideline range, but did impose a sentence at the high end of the range, *to wit*, 97 months. (Doc. 70.) The court noted the reason for its decision to keep the sentence within the guideline range as follows:

> [T]he Court had every intention of departing upward, but in light of the fact that the Government's position and other matters that were set forth through [Watkins' mother] and other factors considering [Watkins'] background, the Court has changed its mind in imposing an upward sentence. It is also hoped that this sentence will show that the Court expects great expectations from [Watkins] in the future.

(*Id*. at p. 15.)

Watkins filed the instant Section 2255 motion on December 3, 2012 (Doc. 79), and brief in support on March 29, 2013 (Doc. 92). In his motion, Watkins claims that his guilty plea was involuntary due to his counsel's threat to withdraw, that his counsel was ineffective for her failure to consider a defense based on his psychological condition, and that his counsel was ineffective during the sentencing proceedings for her failure to challenge the weapons enhancement. (*See generally id*.) The Government filed its response on April 8, 2013. (Doc. 93.) Following Watkins' reply (Doc. 94), the court directed the Government to address the impact of *Heiser v. Ryan*, 951 F.3d 559 (3d Cir. 1991) (*see* Doc. 95). The court appointed counsel for Watkins (Doc. 98), and held a hearing on the motion on August 8, 2013.

4

At the hearing, Watkins testified on his own behalf regarding the bases for his contention that his prior court-appointed attorney, Attorney Ulrich, provided him with deficient representation. On direct examination, Watkins recounted the four occasions on which Attorney Ulrich visited him while he was detained in York County Prison.

Attorney Ulrich first met with Watkins on March 4, 2011, at which time she discussed the multiple bank robbery charges for which Watkins was indicted in relation to his actions within the Middle District of Pennsylvania, and also identified that Watkins had pending charges for bank robbery in the District of Maryland. Attorney Ulrich expressed her intention to contact the prosecutor in the District of Maryland for purposes of negotiating a possible guilty plea that would satisfy charges from both districts. On her second visit, Attorney Ulrich provided a copy of the plea agreement to Watkins for his review. The plea agreement included charges from both districts, and called for Watkins to plead guilty to two counts of bank robbery. Attorney Ulrich expressed her satisfaction with the plea agreement, and offered to answer any questions Watkins had regarding the terms contained therein. Watkins expressed hesitation in signing the agreement, and brought up that he had "mental issues," including thyroid disease and Post Traumatic Stress Disorder ("PTSD").

On March 31, 2011, Attorney Ulrich made a third visit to Watkins in York County Prison, at which time she answered Watkins' questions regarding the agreement's terms. At the hearing, Watkins alleged that he again asked Attorney Ulrich whether she retrieved his medical records, which Attorney Ulrich responded in the negative. During the visit, Attorney Ulrich and Watkins discussed the guidelines.

5

According to Watkins, Attorney Ulrich appeared frustrated with Watkins' hesitation and did not discuss a mental incapacity defense.

On May 5, 2011, Attorney Ulrich made a fourth visit to Watkins in York County Prison, at which time Watkins again asked about his medical records. According to Watkins, Attorney Ulrich expressed her opinion that the prosecutors would not find Watkins' thyroid disease or PTSD pertinent, and did not further discuss a mental incapacity defense. Attorney Ulrich further expressed her opinion that the plea agreement was in Watkins' best interest. Especially pertinent to the motion *sub judice*, Watkins claimed that Attorney Ulrich stated that she did not know what else to do, and that she would have to withdraw if Watkins refused to sign the agreement. It is this comment that Watkins contends coerced his decision to plead guilty and rendered his guilty plea involuntary.

Watkins appeared for sentencing, and expected to receive a sentence within the guideline range. Both Attorney Ulrich and counsel for the Government recommended a 78-month sentence. Watkins testified that both he and Attorney Ulrich were shocked when the court expressed its intention to impose an upward departure. Watkins testified that, during the twenty-minute recess, Attorney Ulrich indicated that they needed to move forward with the hearing, and that there was nothing she could do at a second hearing that she could not do at the time. Watkins testified that Attorney Ulrich again indicated that, if Watkins wanted to withdraw his guilty plea, she would have to withdraw as counsel. Watkins proceeded with sentencing, and received a sentence at the high-end of the guideline range.

At the August 8, 2013 hearing, Attorney Ulrich testified as to her recollection of her representation of Watkins. Attorney Ulrich, an experienced federal

public defender, unequivocally stated that she never threatened to withdraw as Watkins' counsel, nor had she ever made such a threat to any client. Attorney Ulrich testified that, during her meetings with Watkins, he complained of depression and anxiety. Contrary to Watkins' testimony, Attorney Ulrich testified that she in fact retrieve Watkins' medical records, which indicated that Watkins was involuntarily committed in 1999. Attorney Ulrich explained that, based on her review of Watkins' medical records from 1999, records from York County Prison indicating Watkins suffered from a thyroid disease, and information from Watkins' mother indicating that Watkins had a thyroid disease and depression, Attorney Ulrich did not believe a mental incapacity defense would be viable. Moreover, Attorney Ulrich recounted that Watkins did not present any indicators that he may have such a viable defense, nor did he ever contest that he committed the crimes for which he was charged. Attorney Ulrich testified that the majority of their discussion focused on the possibilities for downward departures and variances for sentencing purposes.

Attorney Ulrich testified that she expressed her opinion that the plea agreement represented a great offer for Watkins, and that she was doubtful that she, or any attorney, could get a better result. Attorney Ulrich discussed with Watkins that the guideline range would be 78-97 months, but cautioned Watkins that he was a high risk for a sentence imposed at the high-end of the range or an upward departure. Attorney Ulrich testified that she offered to request a continuance, but informed Watkins that the guideline range would not change. Attorney Ulrich testified that Watkins never requested to withdraw his plea, and agreed to proceed to sentencing.

## II. Discussion

As stated, Watkins presents three challenges to his sentence, namely that: (1) Attorney Ulrich coerced his guilty plea by threatening to withdraw as his counsel if he did went to trial; (2) Attorney Ulrich was ineffective for failing to consider an insanity defense or argue the relevance of Watkins' mental issues at sentencing; and (3) that Attorney Ulrich was ineffective for her failure to challenge the "Court's erroneous determination that [Watkins] use[d,] rather than brandished[,] a firearm during the commission of the charged offense conduct." (Doc. 79.) The court will address each of these arguments.

### A. **Involuntary Guilty Plea**

Watkins contends that his guilty plea was involuntary because it was coerced by threats. As a threshold matter, Watkins must show that his guilty plea was involuntary in order to obtain relief. *See Tollett v. Henderson*, 411 U.S. 258, 267 (1973). By pleading guilty, a criminal defendant waives all claims antecedent to the plea except for its voluntariness. *Siers v. Ryan*, 773 F.2d 37, 42 (3d Cir. 1985). The appropriate test for determining the validity of a guilty plea is that the plea must have been a "knowing, intelligent act" and "the voluntary expression of [the defendant's] own choice." *Heiser v. Ryan*, 951 F.2d 559, 561 (3d Cir. 1991) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). The plea is void if it is "induced by promises or threats which deprive it of the nature of a voluntary act." *Machibroda v. United States*, 368 U.S. 487, 493 (1962).

In *Heiser*, a panel of the Third Circuit held that an attorney who threatened to withdraw as counsel if the defendant did not plead guilty rendered his client's plea involuntary. 951 F.2d at 561. The court considered the attorney's threat to strip the plea of its voluntary character. *Id*. There was no such threat here.

Although well-articulated, the court found Watkins' testimony less credible than that of Attorney Ulrich. Attorney Ulrich is an experienced public defender, and the court finds no reason to discredit her testimony related to her interactions with Watkins during the plea negotiation phase of the proceedings. It is uncontested that Attorney Ulrich made numerous visits to Watkins while he was in pre-trial detention in York County Prison, and that she provided him with a copy of the plea agreement and answered his questions related thereto. Based on the testimony, it appears that Attorney Ulrich was overall patient with Watkins in light of the circumstances. Moreover, the agreement pursuant to which Watkins entered his guilty plea was favorable; Attorney Ulrich was justified in relaying her opinion that the agreement was the best she could get Watkins.

Because the court finds, based on the credibility of the witnesses, that Attorney Ulrich never threatened to withdraw if Watkins refused to plead guilty, Watkins' plea was not a product of coercion, and the plea was entered into voluntarily. Accordingly, the Watkins' plea passes constitutional muster as to its voluntariness, and Watkins' claim for relief on this basis will be denied.

### B. Ineffective Assistance of Counsel

Watkins' remaining arguments challenge Attorney Ulrich's effectiveness, both prior to his plea and during the sentencing proceedings. For the following reasons, Watkins' claims for relief on these grounds will be denied.

#### 1. Standard

A claim for ineffective assistance of counsel is evaluated under the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). The standard has two prongs. First, the petitioner must show that (1) the performance of trial counsel fell below an objective standard of reasonableness, and (2) the performance of counsel unfairly prejudiced the defense. *Id.* at 687-88, 691. The first prong requires the petitioner to show that counsel made errors "so serious that counsel was not functioning as 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. This showing can be made by demonstrating that the attorney's performance was unreasonable under prevailing norms. *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992). The second prong of *Strickland* requires petitioner to show that the errors were sufficiently "serious as to deprive the defendant a fair trial, a trial whose result is liable." *Strickland*, 466 U.S. at 687. To establish prejudice, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694; *see also United States v. Mannino*, 212 F.3d 835, 840 (3d Cir. 2000).

As stated, Watkins did not go to trial. Rather, he pleaded guilty pursuant to a plea agreement. A defendant has a right to effective assistance of counsel during plea negotiations, *see e.g., Hill v. Lockhart*, 474 U.S. 52, 56 (1985), *Missouri v. Frye*, ___ U.S. ____, ____, 132 S.Ct. 1399, 1408 (2012), *Lafler v. Cooper*, ___ U.S. ____, ____, 132 S.Ct. 1376, 1384 (2012), as well as at sentencing, *see, e.g., Mempa v. Rhay*, 389 U.S. 128, 135 (1967). With these precepts in mind, the court will address Watkins' claims.

**2.** **<u>Claims</u>**

Watkins claims Attorney Ulrich was ineffective because (1) she failed to use his mental health history as either a defense to the charges against him or as mitigation at sentencing, and (2) she failed to object to the finding that he used a firearm, rather than merely brandished a firearm, during the commission of the bank robberies. The court will address Watkins' ineffective assistance of counsel claims *ad seriatim*.

### a. Claim One: failure to investigate any possible mental defenses

Watkins argues that Attorney Ulrich rendered ineffective assistance because she failed to thoroughly investigate a potential defense based on Watkins' mental health conditions. This argument is unavailing. Watkins presented no evidence that his alleged thyroid disease, anxiety, or depression would have operated in such a way as to provide grounds for a defense at the guilt or innocence proceedings. Moreover, Attorney Ulrich did investigate this issue by retrieving Watkins' medical records, which indicated he had been involuntarily committed for a short time over a decade prior to his actions underlying the charges. Based on these records, and based on information from both Watkins and Watkins' mother, Attorney Ulrich did not believe there was a mental health defense. This court has reviewed the record, and finds Attorney Ulrich's assessment to be reasonable. The court concludes that Attorney Ulrich acted appropriately in the plea phase of the proceedings. Accordingly, because Attorney Ulrich's performance was not deficient in evaluating the possibility of a defense based on Watkins' psychological condition, Watkins' claim of ineffective assistance on this basis will fail.

### b. Claim Two: failure to properly present Watkins' mental condition as a mitigating characteristic at sentencing

Watkins next argues that Attorney Ulrich rendered ineffective assistance because she failed to articulate an argument for a variance at sentencing. Essentially, Watkins contends that Attorney Ulrich should have explored his psychological condition which would have provided a basis for mitigation for sentencing purposes. This claim is likewise unavailing.

The record indicates that both Attorney Ulrich and the court were well aware of Watkins' psychological conditions. The pre-sentence report in this case contained a detailed mental and emotional health assessment, including Watkins' 1999 involuntary commitment. Furthermore, Watkins' sentencing memorandum, submitted on his behalf by Attorney Ulrich, contained the following: "[Watkins' mother] opines that Mr. Watkins committed these offenses due to undiagnosed mental health problems, drugs, and a gambling addiction." (Doc. 68, p. 3 of 5; *see also* Doc. 68, p. 1 of 4.) Watkins did not provide any additional evidence that could have been presented beyond what was already known by the court and counsel.

Moreover, the record is clear that defense counsel presented an argument on Watkins' psychological condition during sentencing. Specifically, Attorney Ulrich's argument that Watkins' psychological condition should be considered was supported by testimony from Watkins' mother, as well as Watkins' own statements. The court considered this argument and withdrew its earlier intention to impose an upward departure. Accordingly, the court concludes that defense counsel was not deficient in this regard, and Watkins has otherwise failed to meet his burden to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

      **c.**    **Claim Three: failure to object to the U.S.S.G. § 2B3.1(b)(2)(B) enhancement**

Lastly, Watkins argues that Attorney Ulrich rendered ineffective assistance because she failed to object to the six-level sentencing enhancement applicable when a firearm was otherwise used during the commission of a robbery. *See* U.S.S.G. § 2B3.1(b)(2)(B). Watkins contends Attorney Ulrich should have argued that a five-level sentencing enhancement was appropriate, because he brandished, rather than used, the firearm during the robbery. *See* U.S.S.G. § 2B3.1(b)(2)(C). This claim is also fails.

Counsel cannot be ineffective for declining to raise a meritless objection. *See United States v. Patterson*, Crim. No. 06-cr-0289, 2010 WL 2853565, *3 (M.D. Pa. July 20, 2010) (citing *United States v. Saunders*, 165 F.3d 248, 253 (3d Cir. 1999) (holding that counsel cannot be ineffective for failing to raise meritless claims)). The facts of the offense, as set forth in the offense conduct of the pre-sentence report, provided, in pertinent part, as follows:

> On September 17, 2010, Eric Watkins entered M&T Bank on Mount Carmel Road in Parkton, MD. Wearing latex gloves, *and pointing a handgun at the teller with his finger on the trigger*, Watkins handed the teller a note which read, "Give me the fuckin money! No dye pack! Or bang bang bitch! My gun has no feelings!" The teller began providing money from her drawer, and the defendant told her to "hurry up."

(PSR, p. 1.) The definitions of "brandishing" and "otherwise use" in the guidelines are largely unhelpful. The term "brandished" means that "all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person." U.S.S.G § 1B1.1, cmt n.1(C). By contrast, the guidelines define "otherwise used" as "conduct [that] did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a

firearm or other dangerous weapon." U.S.S.G. § 1B1.1, cmt n.1(I).  The Third Circuit has held that, when a firearm is leveled directly at a victim, and especially when this act is accompanied by explicit threats, the firearm has been "otherwise used" for purposes of the sentencing enhancement.  *See, e.g., United States v. Johnson*, 199 F.3d 123, 127 (3d Cir. 1999).

Here, Watkins pointed a handgun at the teller, had his finger on the trigger, and made explicit threats to force her compliance with his demands.  The court has little trouble concluding that Watkins's conduct exceeded the brandishing enhancement and qualified as "otherwise us[ing]" the firearm.  *See id.* at 126 (citing cases differentiating factual scenarios in which firearm was "brandished" from cases in which firearm was "otherwise used").  Thus, the record does not support Watkins' argument that Attorney Ulrich was ineffective for failing to object to the six-level sentencing enhancement for Watkins' use of a firearm during the commission of the robbery.

### III.      Certificate of Appealability

When a district court issues a final order denying a Section 2255 motion, the court must also decide whether to issue or deny a Certificate of Appealability.  *See* 28 U.S.C. foll. § 2255, R. 11(a).  The court may issue a Certificate of Appealability "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To succeed under this standard, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  Watkins is not entitled to a Certificate of Appealability as he has not made a

substantial showing of the denial of any constitutional right. Therefore, the court declines to issue a Certificate of Appealability.

**IV.**         **Conclusion**

For the foregoing reasons, the court will deny and dismiss with prejudice Watkins' motion to vacate, set aside or correct his sentence. A Certificate of Appealability will not issue.

An order consistent with this memorandum of law will be issued separately.

                                                          s/Sylvia H. Rambo
                                                          United States District Judge

Dated: August 19, 2013.